# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )<br>    **Plaintiff,** )<br>)<br>**ALABAMA ENVIRONMENTAL** )<br>**COUNCIL,** )<br>)<br>    **Plaintiff-Intervenor** )<br>**v.** )<br>)<br>**ALABAMA POWER COMPANY,** )<br>)<br>    **Defendant.** ) | **Case No. 2:01-cv-00152-VEH** |

## MEMORANDUM OPINION AND ORDER ON ALABAMA POWER COMPANY MOTION TO STRIKE

### I. **Introduction and Background**

On July 13, 2006, Alabama Power Company ("APC") moved to strike Exhibits 2 and 3 to the United States's Response ("United States's Response") to APC's Motion for Summary Judgment, and paragraphs 4 through 12 of the United States's "additional facts" set out in the United States's Response. ("Motion to Strike"). (Doc. 168).

The United States's Response containing Exhibits 2 and 3, and additional paragraphs 4 through 12, is one document, filed in two versions: redacted (doc. 164) and unredacted (doc. 165). The United States's Response to APC's Motion to Strike

is doc. 170; APC's Reply is doc. 171.

Exhibit 2. is the declaration of Alan Michael Hekking ("Hekking Declaration"). Hekking describes himself as having over thirty (30) years of engineering management experience in the electric utility industry, manufacturing, and air pollution regulatory programs. Attachment to Exhibit 2. From 1970 to 1991 he held engineering and management positions at the coal burning power plants, nuclear plants and central office of the Tennessee Valley Authority ("TVA"). *Id*. From 1994 to 2001 he was a Supervisor in the Major Source Branch of the Memphis and Shelby County (Tennessee) Health Department. *Id*. In 1997, while still employed by the Health Department, Hekking began providing consulting services to the United States Department of Justice ("DOJ") and others "in various civil litigation cases involving coal-fired electrical generating plants". *Id*. Among those services are expert reports and deposition and trial testimony regarding routine maintenance at such power plants. *Id*. The United States describes Hekking as someone who has reviewed the APC documents and who has served as the United States's expert witness in cases similar to this one, which the court interprets to mean what has been referred to throughout this action as "the 1999 enforcement actions".[1]

Exhibit 3. is a summary table, with eight (8) attachments, that is composed of

_____

[1] *See New York v. EPA* ("*New York I*"), 413 F.3d 3, 16 (D.C. Cir. 2005).

various documents about the projects involved in this case, almost all of it provided to the United States by APC's parent, Southern Company, in response to EPA requests made before this action was filed.  The summary is not an APC or Southern document; it was reviewed by Hekking, but he does not say he prepared it or if he knows who did.

Additional paragraphs 4.-12. in the United States's Response are what the United States's Response describes as "Additional Material Facts Believed to Be Undisputed" (additional facts 4-10, doc.166 at pp. 2-6) ("AF 4-10") and "Additional Material Facts Believed to Be Disputed" (additional facts 11-12, doc.166 at pp. 6-7) ("AF 11-12").  The United States represents, but does not warrant, that AF 4.-10. would be undisputed because, while the parties have not engaged in formal discovery on these claims, the United States would expect to prove AF 4.-10. first by using APC documents, and second through the testimony of Alan Michael Hekking along the lines of his Declaration.  These facts would then be relevant to the remaining claims.[2]

_____

[2]  The First through Fourth claims of the United States's Amended Complaint (doc. 127) and the First through Eighth Claims for Relief in Alabama Environmental Council's Complaint (doc. 6), respectively.

3

## II. **Discussion**

After careful consideration of the unredacted version of Exhibits 2. and 3. and AF 4.-12. (doc. 166), the court believes APC's motion to strike is well taken.

1.  Exhibits 2. and 3., and AF 4-12 are, in the current posture of this action, irrelevant.  The United States and AEC concede that, if the holdings of the Legal Tests Memorandum are applied to the  Stipulations, then APC is entitled to summary judgment.  Exhibits 2. and 3., and AF 4-12 are offered on the theory that, were the holdings of the Legal Tests Memorandum to be changed, these Exhibits and additional (disputed and undisputed) material facts would be relevant to the *replacement* legal tests.  Thus, the materiality is conditional: the holdings of the Legal Tests Memorandum would have to be changed to conform with the United States's and AEC's arguments saying those holdings are incorrect in light of *NY v. EPA*, 413 F.3d 3, *reh'g denied*, 431 F.3d 801 (D.C. Cir. 2005) ("*New York I*"), and *New York v. EPA*, 443 F.3d 880 (D.C. Cir. 2005), *reh'g and reh'g en banc denied*, ___ F.3d ___ (D.C. Cir., June 30, 2006) ("*New York II*").  The replacement legal tests governing how increased emissions are measured, and what constitutes "routine maintenance and repair" ("RMRR") would be drawn from *New York I* and *New York II, supra,* cases where the D.C. Circuit upheld, for the most part, EPA's 2002 emissions rule regulating emissions from, *inter alia*, coal-fired electricity generating plants such as

4

the ones involved in this action.   Absent changes to the Legal Tests Memorandum, Exhibits 2.,  3., and AF 4.-12. are not material.

2.     The United States's Response assumes that it knows what the court only wishes it knew: whether the Legal Tests Memorandum is correct in whole or in part and, if incorrect in whole or in part, what the correct legal tests are or will be.  I decline an invitation to engage in a series of "what if" scenarios involving future rulings by the Eleventh Circuit, the Supreme Court, the D.C. Circuit, or any other court.  All this court can say with a reasonable degree of certainty is that this action will, like my decision in *National Parks Conservation Ass'n, Inc. v. TVA*, 413 F.Supp.2d 1282 (N.D. Ala. 2006) ("*NPCA*"), be reviewed by the Eleventh Circuit Court of Appeals.  That review may be limited to a panel decision, or may be *en banc*, and, whatever the result, a review of the Eleventh Circuit's decision could be sought by a petition for a writ of *certiorari* to the Supreme Court.  In the meantime, the Eleventh Circuit could issue a ruling in *NPCA* which could, but is not required to, answer the Legal Tests Memorandum questions.  Or the Supreme Court could issue a ruling in *United States v. Duke Energy*, 411 F.3d 539 (4th Cir. 2005), *cert. granted* 126 S. Ct. 2019 (2006) ("*Duke Energy II*") that the parties could assert controls some or all of the questions answered in the Legal Tests Memorandum.  The possibilities are many; the ultimate outcome unknown.

3.      Finally, the United States suggests that the more prudent course of action might be to stay this action "pending developments in the (emissions increase measurement and modification) cases before the higher courts", *see* 2., *supra*.  United States's Response at 2, n.1.  (Alteration not in original).  The problem with this was noted in the Legal Tests Memorandum:

> . . . predicting the scope of an anticipated decision has not been effective in this action before.  This action was stayed for many months awaiting the Eleventh Circuit's decision in *TVA v. Whitman*, 336 F.3d 1236 (11th Cir. 2003), the thought being that the Court's decision there would either be dispositive or heavily influential on the issues in this action .  It didn't happen: the Court's decision in *TVA*, while relevant to some of the issues in this action, was not dispositive in the manner hoped.

372 F.Supp.2d at 1300.

Further, in *NPCA*, the parties are raising before the Court of Appeals the issues involved in the Legal Tests Memorandum, but in a derivative, not direct, manner.  Under these circumstances, I see no benefit to further delay.  If not the oldest case on my docket, this action is close to it.  The parties and the public have an interest in the outcome, and I would rather be reversed if it meant an earlier disposition than I would await "developments in higher courts", then spend months or years sorting through the parties' arguments over what those "developments" mean to this action, and then see how any decision made thereafter plays out on appeal.  The benefit of direct appeal is that it takes the guesswork and the delay out of the analysis.

For these reasons, and also because the United States would be able to offer the same exhibits and facts in the event that this action ultimately goes to trial under the legal tests asserted by the United States, eliminating any prejudice to the prosecution of its case should that be the result after appellate review, APC's Motion to Strike is **GRANTED**.

      **DONE** and **ORDERED** this the 14th day of August, 2006.

                                          **VIRGINIA EMERSON HOPKINS**
                                          United States District Judge